STEVEN G. KALAR
Federal Public Defender
Northern District of California
SEVERA KEITH
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone:    (408) 291-7753
Facsimile:    (408) 291-7399
Email:        Severa_Keith@fd.org


Counsel for Defendant Zuniga-Tirado

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 17–237 BLF |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | **Court:**          Courtroom 3, 5th  Floor |
| MARTHA ZUNIGA-TIRADO, | **Hearing Date:**  December 15, 2020 |
| Defendant. | **Hearing Time:**  9:00 a.m. |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Martha Zuniga-Tirado submits the following memorandum in support of her request for a sentence of five years of Probation.  This sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing that are set forth in 18 U.S.C section 3553(a)(2).

### I.        PLEA AND ADVISORY GUIDELINE RANGE

Defendant Martha Zuniga-Tirado was convicted on her plea of guilty to Possession with Intent to Distribute Methamphetamine, a violation of 21 U.S.C. §§841(a)(1), (b)(1)(C).  The plea and conviction were based on defendant's involvement in a delivery of Methamphetamine to an undercover informant. The facts underlying the offense, as set forth in the Presentence Investigation

Report ("PSR") are not in dispute, nor are the facts underlying Probation's calculation of the offense level and criminal history category, although, for reasons set forth below, the defense requests that the Court sentence Mr. Zuniga-Tirado to five years of Probation, a downward variance from the guidelines and the recommendation of United States Probation. Defendant respectfully asserts that there are circumstances underlying the conviction which justify a mitigated sentence, pursuant to 18 U.S.C. § 3553(a).

## II.      FACTUAL BACKGROUND

### A.    History and Characteristics of Ms. Zuniga\-Tirado

At the time that she sold drugs to an undercover informant, Martha Zuniga-Tirado was destitute, needing money to support herself and her family, and to pay for necessities such as food, clothing, and rent. PSR ¶ 30. Her life had been turned upside down when her husband suddenly left her. Although she had worked for most of her life, at the time her husband left, she was working in the home as a homemaker. In addition to the trauma of her family being split apart so suddenly, Ms. Zuniga-Tirado became the victim of financial abuse by her husband, who threatened to report her to CPS and to take away her children if she left them and went to work. He did not pay child support. PSR ¶ 56. At the same time, her nephew was committing financial fraud against her by opening up credit cards in her name and taking money out of her bank accounts. She did not recover a great deal of this money. PSR ¶ 58. Her difficulties contributed to depression and were significant factor in the crime that she committed.

Ms. Zuniga-Tirado experiences a great deal of anxiety regarding the well-being of her children. This likely stems from two traumatic incidents in her youth. First, her brother was tragically killed in a car accident, and she still feels the impact of this. Second, she was kidnapped by a neighbor when she was 15 years old, and although she escaped without injury, she was deeply traumatized by this. These incidents have led her to be very concerned and anxious with matters that relate to her children's safety, as she feels that those things could happen to anyone, since they happened to her. PSR ¶ 53. Although she sees the errors of her choices now, her crime was significantly motivated by her desperation to support her family.

### B.    The Nature and Circumstances the Offense

Given Ms. Zuniga-Tirado's lack of criminal history, the current crime was a shocking aberration in her behavior. She committed the instant offense because she needed money for her

family, even though now, she realizes how wrong it was to try to help her family in that way.  PSR ¶ 9, 12.  She fully accepts responsibility for her crime.  She is ashamed that she made such horrible choices.  She let everyone down, including herself.  PSR ¶ 28.

### C.     Post Offense Rehabilitation

Since the time that she was charged with the instant crime, Ms. Zuniga-Tirado has taken time to reflect on her actions and to rehabilitate.  She has actively participated in counseling and community support groups.  The insight and support that she has gained from these communities has helped her a great deal, and given her the ability to confront her actions, and to have the tools to make sure that she will not reoffend. During the period that she has been on pretrial release, which has been almost four years, she has committed no violations of the terms of her release, nor has she ever tested positive for substance use.  PSR ¶ 3.

Ms. Zuniga-Tirado is financially supporting five other individuals. She has gained full custody of her children.  She supports her three sons and their education, including getting the older two involved in a program where they can continue their education and receive job training.  PSR ¶ 55, 58. She is the primary caretaker of her two-year-old daughter and her elderly father, who suffers from diabetes, has a difficult time walking on his own, and is losing his sight.  PSR ¶ 50.  These two individuals literally depend upon her caregiving and her income to survive.  PSR ¶ 58.   She is very close with her entire family, and she is more than happy to take care of her father in his old age.  She is responsible for taking him to his medical appointments, buying things that he needs, and taking him on any errands he needs to run.  She consistently has full time work, and often times works a second job to support her family.

### III.     A SENTENCE OF FIVE YEARS OF PROBATION ADEQUATELY SATISFIES THE GOALS OF 18 U.S.C. SECTION 3553(a)

Criminal "punishment should fit the offender and not merely the crime."  *Williams v. New York*, 337 U.S. 241, 247 (1949).  That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted).  The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime."  *United States v. Barker*,

771 F.2d 1362, 1365 (9th Cir. 1985).  The sentence recommended in the United States Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor.  *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

### A. Seriousness of the Offense, Respect for the Law and Just Punishment.

The Supreme Court has warned, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."  *Gall*, 552 U.S. at 54 (quotations omitted).

There is no question that Ms. Zuniga-Tirado made a significant mistake.  Her lapse in judgment has placed her freedom in jeopardy in a way that will not only impact her, but her entire family.

Ms. Zuniga-Tirado asks this Court to place her on probation for a period of five years.  As the Supreme Court has noted, probation, is not "an act of leniency" but "a substantial restriction of freedom."  *Gall*, 552 U.S. at 44.  Moreover, a sentence of probation provides the Court with strong tools to punish Ms. Zuniga-Tirado if she violates any of the probation conditions.  Under 18 U.S.C. § 3565(a)(2), when a defendant violates a condition of probation, the Court may revoke probation and resentence the defendant anew on the underlying criminal charge, including to a term of imprisonment followed by supervised release.  *See United States v. Vasquez*, 160 F.3d 1237, 1238 (9th Cir. 1998).

### B. Deterring Criminal Conduct and Protecting the Public.

The Court can consider "post-crime maturation and self-rehabilitation" at sentencing.  *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008).  The Supreme Court has "made clear that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a *critical factor* to consider in the imposition of a sentence."  *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall*, 552 U.S. at 59 (emphasis added)).  Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime.  *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)). Since her arrest in April, 2019, Ms. Zuniga-Tirado has been supervised by Pretrial Services without a single violation.  She has maintained employment, supported

his family and become even more connected to her church community.  She has told everyone about these charges and expressed remorse for them, even though she knew how it would affect people's estimation of her.  Her comportment during this time means Mrs. Zuniga-Tirado understands the seriousness of her actions and that there are consequences.  This ensures that she is unlikely to commit another crime.  This has been empirically proven.  A recent study published in the *Federal Probation* journal noted that empirical evidence has demonstrated "the importance of defendants' success on pretrial services supervision as a harbinger of improved outcomes in subsequent stages of the criminal justice system" including "reduced failures during post-conviction supervision."  Baber, et al., "A Viable Alternative? Alternatives to Incarceration Across Seven Federal Districts," *Federal Probation* Vol. 83, no. 1, p. 8 (Jun 2019).[1]

Moreover, the need to protect the public supports keeping Ms. Zuniga-Tirado out of custody in order to be a positive influence in the lives of her children.  A recent study in the Journal of the American Medical Association ("JAMA") demonstrated "that parental incarceration is associated with a broad range of psychiatric, legal, financial, and social outcomes during young adulthood" and "may perpetuate disadvantage from generation to generation."  Gifford, et al., "Association of Parental Incarceration With Psychiatric and Functional Outcomes of Young Adults," *JAMA Network Open*, (Aug. 23, 2019).[2]  The study explained

> The incarceration of a parent represents a serious disruption of a child's life. Our results revealed that the incarceration of a parent figure was common, disproportionally so in African American and American Indian families, a risk factor for anxiety and substance use disorders a decade or more later, and associated with significant hurdles during the transition to adulthood, including having a felony charge, spending time incarcerated, not completing high school, becoming a parent when younger than 18 years, and being socially isolated. These associations remained when accounting for a broad range of other childhood psychiatric status and adversities such as poverty and maltreatment, suggesting that childhood parental incarceration has an enduring reach into offspring's adult lives.

*Id.*

---

[1] The study, which reviewed seven different alternatives to incarceration courts—including this District's Conviction Alternatives Program ("CAP")—concluded that participating in programs like CAP "is associated with improved outcomes, such as increases in employment and fewer positive drug tests, and among successful participants, a lower probability of arrest."  Baber, et al., "A Viable Alternative? Alternatives to Incarceration Across Seven Federal Districts," *Federal Probation* Vol. 83, no. 1, p. 14.  The full report is available https://www.uscourts.gov/sites/default/files/83_1_2_0.pdf.

[2] *Available at* https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2748665.

Courts have long recognized that a defendant's family pays a high price when a court imposes a prison sentence.  One district court has observed that "[c]ausing the needless suffering of young, innocent children does not promote the ends of justice."  *United States v. Chambers*, 885 F. Supp. 12, 15 (D.D.C. 1995).  Mindful of the collateral consequences of separating a parent from his children, district courts have imposed—and Circuit courts have affirmed—sentences outside the advisory Guideline range based on family circumstances.  *See, e.g., United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (affirming probation sentence when advisory Guidelines range was 41-51 months because, in part, of dependence between the defendant and his 8 year old daughter); *United States v. Husein*, 478 F.3d 318, 324, 327-28 (6th Cir. 2007) (affirming non-custodial sentence of 270 days of house arrest when advisory Guideline range was 37-46 months in part due to family circumstances); *United States v. Galante*, 111 F.3d 1029, 1035 (2d Cir. 1997) (affirming sentence of two years house arrest and community service when advisory Guideline range was 46-57 months because "sentencing court thought that if defendant were imprisoned the family unit would probably be destroyed, and defendant's wife and children relegated to public assistance").

Incarcerating Ms. Zuniga-Tirado will have a devastating impact on her family.  Leaving two minor children and two young adults without their mother and the only source of support they have had for years.

## C.   Providing Training, Medical Care or Other Treatment.

Ms. Zuniga-Tirado is in need of mental health services and the probation office is recommending mental health counseling and drug testing and treatment as a condition of probation. Ms. Zuniga-Tirado reports that current counseling greatly helps her.  PSR ¶ 65.  If granted probation, Ms. Zuniga-Toronto will continue to receive the counseling that she needs.

## I.   D.   Avoiding Unwarranted Sentencing Disparities.

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'"  *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall*, 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

A five year probationary sentence would not lead to unwarranted sentencing disparity.  In this

matter, co-defendant Padilla-Lopez, received a sentence of 36 months' imprisonment and three years of supervised release for conspiring to distribute 17.7 pounds (mixture) of methamphetamine.  Dkt. 109.  Here, Ms. Zuniga-Tirado has pled guilty to distributing 496.2 grams (mixture) of methamphetamine. Ms. Zuniga-Tirado and Padilla-Lopez were minor minor players in this methamphetamine distribution conspiracy As such, her sentence should be significantly lower than her codefendant's, whose conduct was similar, but who distributed a significantly higher amount.

Moreover, judges in this district have granted variances similar to the one requested based on considerations regarding the impact that imprisonment would have on the family and on minor children.  *See United States v. Julius Boyd*, CR CR-19-258-PJH (varying from a guidelines range of 33-41 months to five years' probation (Dkt. 31), based in part on concerns regarding negative effects of incarceration on defendant's family (Dkt. 29 at 10)); *United States v. Angelique Marshall,* CR 17-310-PJH (varying from 8-14 month range and sentencing to one day credit for time served and three years' supervised release (Dkt. 22) in part to avoid detrimental effects on children); *United states v. Lakeesha Jefferson*, CR-08-575-JSW (sentencing to five years' probation (Dkt 22) due to defendant being sole caregiver to a special needs child. (Dkt. 14)

## CONCLUSION

for the reasons set forth above, Ms. Zuniga-Tirado respectfully requests this Court place her on probation for five years, as recommended by probation, waiver of any fine, and a special assessment of $100.00.

//
//
//
//
//
//
//
//

1

2

3   Dated:      December 8, 2020

4

5                                                    STEVEN G. KALAR

6                                                    Federal Public Defender

7                                                    Northern District of California

8

9                                            _____
                                                                /S
10

11                                                   SEVERA KEITH

12                                                   Assistant Federal Public Defender

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28